Downs v. Jackson.

JAMES DOWNS

*v.*

WILLIAM B. JACKSON.

1. PARTNERS — *of their rights and duties in relation to each other with respect to the payment of debts.* Where partners owe a debt, it is the duty of each to exonerate the other from a due proportion of it. No act falling short of a complete exoneration of the one party and his property from so much of the liability as he is entitled to be exonerated from, will operate as a discharge of the other party from his obligation in that regard.

2. So, where the lands of one partner are sold with those of another, *en masse*, under an execution against both, for a partnership debt, such a sale will not operate to discharge any part of the property sold, nor the parties from their respective duties.

3. REDEMPTION *from sale on execution — all the land must be redeemed.* Where lands owned severally by the partners, are thus sold *en masse*, neither one can obtain a discharge of his property without paying the whole amount of the purchase money and interest.

4. SAME — *Rights of the several parties.* Each of the parties, whose lands have been sold in that manner, has the same right, after the sale, within the time allowed by law, to redeem the lands for the purpose of discharging his own property, as he had before that time to pay the debt to discharge himself from personal liability.

5. Although such a sale might be irregular, and for that reason might be set aside, yet setting aside the sale would only operate to revive the debt, and neither party would be required to make the charge upon his property a personal debt against the partners, before he would have the right to satisfy it.

6. CONTRIBUTION, *as between partners.* Where one of two partners redeems the lands of both under the circumstances mentioned, he may compel contribution

in equity from his copartner, for one half the sum paid by him, with interest from the time the payment was made.

7. SET-OFF, IN EQUITY. Courts of equity will not set off mere cross-demands.

8. Upon a dissolution of a copartnership, one of the partners purchased the remaining stock on hand, and gave his copartner his notes therefor. Subsequently, the partner making such purchase, redeemed lands belonging to the partners severally, from a sale under execution against both for a partnership debt; and in a suit in equity for contribution from his copartner of a moiety of such redemption money, he sought to set off the amount to which he might thereby be entitled against his notes given upon his purchase of the stock. *Held,* that the notes constituted a mere cross-demand, and there being no proof of the insolvency of the party to whom they were given, nor any special equity requiring the set-off to be made, it could not be allowed.

9. SET-OFF, AT LAW. But the demand of the party who made the redemption, was a legal one, and might have been set off at law in an action upon the notes.

WRIT OF ERROR to the Circuit Court of Shelby county; the Hon. CHARLES H. CONSTABLE, Judge, presiding.

This was a suit in chancery instituted in the court below, by James Downs against William B. Jackson.

The complainant alleged that he and the defendant had been in copartnership in the business of the manufacture and sale of furniture; that the partnership continued for one year, and was then dissolved by consent. That upon the dissolution, the complainant purchased from the defendant the furniture belonging to the firm then on hand, for which he gave the defendant his five promissory notes, two of which had been paid, and upon the remaining three suit had been brought and was then pending; that upon these notes there was not due more than the sum of $200. That the firm at the time of the dissolution were indebted to Roundy, Chabin & Co., in the sum of about $400, upon which they afterwards recovered a judgment against both the complainant and defendant; that an execution was issued upon that judgment, and certain real estate belonging to the complainant and defendant was levied upon and sold. Complainant alleges that he redeemed the property from the sale, paying the sum of $441.56 for that purpose, and claims that one half that amount was due and owing from the defendant to him, according to the terms of the partnership.

30 — 33D ILL.

It is further alleged that the complainant and defendant made a full and final settlement of all their partnership matters, with the exception of said promissory notes, and the amount paid by the complainant for the redemption of said property.

That the defendant refused to settle said amount, or to allow it as a set-off against said notes. That the defendant is in moderate circumstances, and if complainant is compelled to pay the notes it would greatly embarrass him, and the amount the defendant is owing him would be in danger of being lost. The complainant sought to compel contribution from the defendant of one half the amount he had paid in redemption of the land, and to set off the amount thus due the complainant against the amount remaining due on his notes to the defendant.

The defendant answered the bill, admitting the partnership and the dissolution thereof, and the purchase of the furniture by complainant, and claims there is still due on the notes given therefor, about $200. He admits the recovery of the judgment against them by Roundy, Chabin & Co., and the sale of real estate under execution; but alleges that the land was sold *en masse*, and that separate bids could easily have been made. He denies that complainant was compelled to redeem the whole of the property from said sale, for the reason that the sale was in violation of law and should have been set aside. The defendant admits that he refused to allow complainant the amount claimed to have been paid by him, for the reason that he gave up his own land to the sheriff, in good faith, to satisfy his part of the judgment, and that complainant had the certificate assigned to himself.

A replication was filed, and upon the hearing Edwin Jones testified, that the complainant and defendant dissolved partnership some time in 1860; that the notes in controversy were given at the time of said dissolution; that the parties did not at that time make a final settlement; that the notes were given for the furniture then on hand; that some time in the spring of 1863 the parties had a settlement of all their partnership matters, except the notes and the judgment in favor of Roundy, Chabin & Co.; that complainant then offered to set off the one-half of

the amount he had paid for the redemption against said notes, which defendant refused to do.

The complainant proved by A. W. Chabin, who was one of the firm of Roundy, Chabin & Co., that the land of the complainant and defendant had been sold on execution, and that the sheriff's certificate was transferred to him, and that some time shortly before the redemption was out, complainant redeemed said land by paying him the sum of $441.56; that he receipted the certificate for the amount.

The complainant also gave in evidence the certificate of sale and receipt thereon, and the execution, levy and return thereon.

The court below entered a decree dismissing the bill, and the case is brought here upon writ of error, the complainant insisting he was entitled to the relief sought.

Messrs. HENRY & READ, for the plaintiff in error, presented the following points and authorities:

I. Courts of equity have original jurisdiction in case of set-off, and where the debts are connected, it is allowed independent of the statute. *Stevens* v. *Gladding*, 17 How. 447; 2 Story Eq. 657.

The Supreme Court, in the case of *O. & M. R. R. Co.* v. *Irwin*, 27 Ill. 178, say "that there is a natural equity as to claims arising out of the same transaction; that the one claim should compensate the other, and the balance only should be recovered."

II. One partner cannot sue his copartner at law unless the firm has been dissolved, balance struck, and an express promise to pay; the remedy is by bill in equity for an account. 11 Ill. 156; 15 id. 32; 18 id. 532; 2 Scam. 495, 499.

III. It is universally admitted that the duty of contribution originates in the equitable consideration that those who have assumed a common burden ought to bear it equally, and from this equitable obligation each partner who has become jointly liable, may reasonably be considered in equity as mutually contracting among themselves with reference to their duty in conscience. This is the view taken by Lord ELDON in *Craythorne* v. *Swineburn*, 14 Ves. 160, adopting the views taken by ROMILLY *arguendo; Campbell* v. *Messer*, 4 Johns. Ch. 334; *Lang-*

*dole* v. *Cox*, 7. Morr. 401; *Fletcher* v. *Grover*, 11 N. H. 368; *Johnson* v. *Johnson*, 11 Mass. 359; *Chafee* v. *Jones*, 19 Pick. 264; *Horback* v. *Elder*, 18 Penn. 33; *Powers* v. *Nash*, 37 Me. 322; *Holmes* v. *Weed*, 19 Barb. 128; *Yates* v. *Donelson*, 5 Md. 389.

Again, contribution rests on the principle that payment by one of two joint obligors has removed a common burden from both of them, and that by the payment a common benefit has been received. *Screven* v. *Joyner*, 1 Hill S. C. 260.

Where there is a fixed and positive obligation, the law requires no one to wait for a suit if he has no defense. 1 Pars. Con. 33, 34; Ohio St. 327. See also the extent to which the doctrine of contribution was carried by the Supreme Court of the United States, in the case of *McLearn* v. *McLearn*, 12 Curt. Dec. 273.

In equity an appropriate remedy may and will be granted whenever it is, *ex equo et bono*, necessary and proper; for in equity there is no difficulty in one partner suing the other for money advanced, contribution made, or liabilities incurred, simply on the ground that it has its foundation in a partnership. Story on Part. 339, § 222.

The answer of the defendant admits that the land of complainant had been sold on execution, issued on a judgment rendered against both of them as partners. This gave to complainant the right of redemption, and the right upon defendant for contribution if he paid more than he was equitably bound to pay, and whether there were irregularities or not in the conduct of the sale, cannot affect the right of complainant to contribution from defendant. *Frith* v. *Sprague*, 14 Mass. 455.

It is urged that complainant should have set the sale aside. Concede that he might have done so, still he would have the right, after setting the sale aside, to have paid the judgment and call on defendant for contribution.

It is also urged that the payment by complainant was voluntary, and that there was no privity between the parties from which a promise could be implied. But the very fact that they were partners, that it was a joint judgment, and that the judgment was for a partnership debt, creates a sufficient privity. Story on Part. 359, § 222.

Again it is urged that the defendant turned out his land to satisfy his part of the execution, in good faith, but to this we think it is a sufficient answer to say that there is no evidence as to the value of the land of defendant, nor as to the extent of the interest that defendant had in the land. The levy recites that the undivided interest of Jackson in certain lands, describing them, was levied upon, but whether that interest was one-half or one-hundredth is no where made to appear from the evidence, and courts of law and their ministerial officers, while executing their process, cannot undertake to make contributions and adjust the equities of the parties defendant to the execution in that way; nor could complainant have redeemed his own land without redeeming the land of the defendant at the same time. *Hawkins* v. *Vineyard*, 14 Ill. 26.

It is also insisted that there are irregularities in the redemption. Section 13 of Scates' Stat. p. 607 provides that it shall be lawful for any defendant whose lands shall be sold by virtue of any execution, within twelve months from such sale to redeem such land by paying to the purchaser thereof the sum of money which may have been paid on the purchase thereof, with ten per cent. from the time of such sale, and on such sum being paid as aforesaid, the sale and certificate thereon granted shall be null and void.

The evidence proves the payment of the redemption money within the twelve months by complainant, the receipt and delivery of certificate by the purchaser to complainants.

Mr. S. W. MOULTON, for the defendant in error.

There is no error in the record. Plaintiff's bill simply states that judgment was had against Jackson & Downs for $401; that execution issued, and land of Jackson & Downs was sold to satisfy same.

That afterwards, and without request of Jackson, Downs redeemed all the land sold, for $441.56, and Downs by the bill wants to set off $200 that he owes Jackson on notes, against half the redemption money so paid by him.

The answer admits sale of land *en masse* as stated, claims that Jackson gave up his land in good faith, and about 70 acres, worth more than half the judgment and costs, and that he, Jackson, don't want to redeem the same. That land could have been sold in parcels; that part could have been redeemed, and that sale could have been set aside by Downs, &c.

1st. Defendant claims that the sale was irregular and could have been set aside.

2d. Downs was under no obligation to redeem Jackson's land, and had no right to redeem it. Jackson had a right to pay his half of the judgment by turning out land or other property.

3d. Downs can't take advantage of the irregularity of the sale by the officer to prejudice Jackson.

4th. It was not Jackson's fault that Downs' land was sold on execution. Downs had the right to pay his part in money, and it is his own fault that he did not pay and thus prevent sale of land. He can't take advantage of his own *laches.*

5th. The land of Jackson has never been redeemed. The statute requires that persons redeeming shall obtain a certificate of redemption from the purchaser, &c. See Cooke's Stat. pp. 607, 609.

No certificate has been made. Therefore the sale is good against Jackson, and the title is not in him.

Messrs. HENRY & READ, in reply, cited *Stewart* v. *Croes*, 5 Gilm. 444; *Ross* v. *Mead*, id. 172; 4 Scam. 371; 2 Paige, 61.

Mr. JUSTICE BECKWITH delivered the opinion of the Court:

This was a bill in chancery for contribution and a set-off. The parties were partners sharing profits and losses equally in the manufacture and sale of furniture for one year, ending November 22, 1860, when the copartnership was dissolved, and the plaintiff in error bought the interest of the defendant in error in certain furniture belonging to the firm, and gave his notes therefor; a part of which were paid, but upon the remainder there was due at the commencement of the suit about two hun-

dred dollars. At the time of said dissolution, the firm was indebted to Roundy, Chabin & Co., in the sum of about four hundred dollars, upon which indebtedness a judgment was rendered in April, 1861. An execution was afterwards issued thereon and satisfied by a sale *en masse* of certain lands belonging to the parties severally. On the 1st day of January, 1862, the plaintiff in error redeemed from the sale by paying to the purchaser the amount of his bid with interest, for which he gave a receipt upon the back of the certificate of sale which he delivered to the plaintiff in error. In the spring of 1863, the parties had a settlement of all their copartnership matters except the claim of the plaintiff in error to be repaid one-half of the amount paid by him to redeem said lands, and the balance due upon said notes. The plaintiff in error by the present suit seeks contribution for a moiety of the sum paid by him, and a set-off of the same against the amount due upon his notes. The liability of the parties to Roundy, Chabin & Co., was a joint one, and it was the duty of each party to exonerate the other from a moiety of it. No act falling short of a complete exoneration of the one party and his property from so much of the liability as he was entitled to be exonerated from, will operate as a discharge of the other party from his obligation in that regard. The sale *en masse* of the lands of the defendant in error with those of the plaintiff in error did not discharge any part of the property sold, nor the parties from their respective duties. Neither party could obtain a discharge of his property without paying the whole amount of the purchase-money and interest, and each of them had the same right after the sale, within the time allowed by law to redeem the lands for that purpose, as he had before that time to pay the debt to discharge himself from personal liability. The sale may have been irregular, and for that reason might have been set aside, but setting aside the sale would have revived the debt, and we are unable to discover any satisfactory reason for requiring the plaintiff in error to make the charge upon his property a personal debt against the defendant in error and himself, before satisfying it. The law does not require acts to be done, where there is no conceivable object to be gained

by doing them. In the present case, the right to contribution is founded upon the duty of exoneration. The plaintiff in error has been compelled to pay money to exonerate his property from a liability; a moiety of which he ought to have been exonerated from by the defendant in error. The lands were discharged from the sale by the purchasers accepting the redemption money. The statute providing a mode of evidencing the redemption, may be enforced by an appropriate remedy, but a compliance with its provisions is not a condition precedent to the assertion of the right of plaintiff in error to contribution. The court below should have rendered a decree in favor of the plaintiff in error for the one-half of the sums paid by him, with interest thereon from the time of its payment. The plaintiff in error was not entitled to the set-off claimed by the bill. There was no proof of the insolvency of the defendant in error, nor of any special equity requiring the set-off to be made. The demands were not necessarily connected with each other; that of the plaintiff in error arose out of the contract of partnership; that of the defendant in error from the sale of certain furniture, and there was no understanding between the parties that the one demand should be set off against the other. They were mere cross-demands. The obligation of the plaintiff in error was to pay his notes when they became due, without reference to the affairs of the partnership, and there is no equity shown for blending the two matters together, contrary to the agreement of the parties. The demand of the plaintiff in error was a legal one, and might have been set off at law, in action upon the notes. (Coll. on Part. § 288). It is well settled that courts of equity will not set off mere cross-demands. *Ranson* v. *Samuel,* 1 Craig and Phil. 161.

The decree of the court below will be reversed and the cause remanded.

*Decree reversed.*